Helman. May it please the Court, I am Glenn Taubman representing Bernard McKay. This case was before the Court previously. In the first appeal, this Court reversed the summary judgment ruling that Bernard McKay was a member of the AMFA union. This Court remanded for a trial on the critical issue of whether or not Mr. McKay was a voluntary and consenting member. And that didn't get resolved, did it? It sure did, Your Honor. Al, where? The judge made findings of fact that Mr. McKay responded to union officials' inquiries that he had no problem paying dues, but he did not want to be a union member. The judge continued. He said more than that. He said, I can't find the exact language, but didn't he say something to the effect that he wasn't making an actual finding, but that the union couldn't have assumed based upon what he said that he was? And that raises the legal issue that is before the Court. Which gets back to Judge Reimer's question, is where did Judge Martinez answer that question? Well, he – he, I believe, answered the question as a factual matter. I believe his findings were that Mr. McKay was not a member. In fact, even though he was not a member. Where did he say that, though, Mr. Talmadge? I mean, you know, let me just say this, and both sides can hear it and answer the same question. I mean, I must have read this, the findings and conclusions, you know, two dozen times. And I could make an argument with a straight face that he implicitly found that he was a member. And I can make a straight-faced argument that he implicitly found that he was not a member. But he made no finding, and that's what the remand was for. I'm just – I'm perplexed. Your Honor, I will say, frankly, I am and was perplexed, too, and I read this opinion probably more than anybody, but I think that – Well, I'm really sorry if you had to read it more than two dozen times. That's beyond the veil. Well, Your Honor, the remand was back to the trial court to – and the quote was, as this Court said, that there remain genuine issues of material fact and of law and dispute as to whether Mr. McKay was a member of the union. My reading of this case is the judge said, as a factual matter, he is not a member of the union. He told the union president, I will pay you your money, but, quote, I do not want to be a union member. I mean, that's not a quote, right? I mean, that's what the union – what the judge said, but that is not what he said. He said something like, I don't want to participate in meetings, I don't want to get mailings. He didn't say, I don't want to be a member. He used terminology to the effect that he was not interested in participating in union activities. Right. But he was happy to pay dues. He was happy, as the testimony – his testimony is, he was willing to pay money to the union to keep his job. I thought the testimony was that he actually used the term dues. Well, I think he sometimes used the term dues, and we've tried to make that clear in the brief, that these are not terms of art. I understand, under the labor law, but here's my problem, Mr. Taubman. I'm looking at, and the party's focused on it in the briefs, memorandum and decision page 7, line 11, where Judge Martinez goes through the point you're making here about whether or not Mr. Mackey had ever, you know, made known affirmatively a decision And then he has this very ambiguous sentence that says, while these facts did not without more make Plaintiff a de facto member of the union, they reasonably led union officials to believe that Plaintiff was a member rather than a non-member. Why shouldn't I read that to conclude that Judge Martinez found him to be a de facto member of the union? And that's the answer to the first panel's remand. I don't believe you can, that is a fair reading of what the judge found when you look in the context of the facts of this case. As I said, he ended up, his final line is, it was reasonable for the union to believe that Plaintiff was a member and treat him accordingly, even if in fact he was not. So to get back to Judge Reimer's conundrum, I mean, you can make the argument either way. In essence, what the judge is saying is, okay, Mr. Mackey, if I'm talking to you, I can understand that you didn't make yourself a member, and then to the union, but you could believe that he was. So how does that answer the question on remand? It answers the question, Your Honor, because there is a legal standard to apply that I think this court is on this record. But we don't get to the legal standard until we answer the factual question as to whether or not the guy was a member. If we know he's a member, then we know what law applies. If we know he's a non-member, we know what law applies. But you never get to the legal question until you determine the factual question. Well, I understand what you're saying. If you look at some of the cases that have been cited both ways, including the first panel cited approvingly the United Nuclear case, the law is voluntary unionism. The one court has said, quote, enlisting in a union is a wholly voluntary commitment. It is an option that may be freely undertaken or freely rejected. In what context does that come from? I mean, the cases that are about union discipline are obviously concerned with something else, right? They're concerned with whether somebody is some – has agreed to participate and in that sense be a union member. It gets real murky when you're talking about union security clauses because we have financial core members and we have – here you have a collective bargaining agreement that says that people have to be members, but we know it doesn't really mean that. It means they have to be, quote, financial core members. So it's not even clear what we mean when we say was he a member. Well, I agree the courts have been less than clear and the Supreme Court in Marquez, a case not cited here, has been less than clear on this use of member and so on because member does not mean member. But that actually gets me to an important point. Mr. McKay is an airline mechanic. He's not a labor lawyer. He has never read Marquez. He has never read Hudson. He doesn't know what all of this means. So when he says in response to a union letter on December 2nd, 1999, which says, you must pay us $90 in dues or you will be fired, and that letter says nothing about non-membership. It says nothing about reduced fees. They send him a letter. But he did get a copy of the collective bargaining agreement, which provides, does it not, the mechanism by which you become a whatever we're calling it, a – a participating core member. No, Your Honor. Actually, actually, the collective bargaining agreement says nothing about this. No. But he did get two. He did get the official form. And he got verbal advice a couple times, which was quite specific, as I understand it, about the fact that he could either be a member and pay dues or he could be a non-member and then make a decision whether to pay less than dues. Is that record clear, at least to that degree? The record is clear that he was given a notice and he had conversations with union officials that are along the lines that Your Honor said. And having been told that, he didn't say, okay, I want to be a non-member. I – and I want to – and I want you to tell me how much I really have to pay, i.e., give me a Hudson notice. He didn't say anything like that. He said, fine, I'll pay the dues. I just don't want to participate. That – well, that would get us to our second issue, which is the Hudson notice is invalid as a matter of law under all of these cases, these circuits' cases, going back to Hudson and then through Cummings and Harris. If everything turns on whether he's a voluntary member, right? If everything turns on that. The whole case turns on whether he's a voluntary member. Well, that's the question, not the answer. We said this from the beginning. But now I don't think the trial judge who heard the testimony and made a finding of fact that Mr. McKay responded that he had no problem paying dues, and again, dues is a term that Mr. McKay, an airline mechanic, doesn't quite know the difference between dues and core fees and agency fees and so on. He gets a letter, the December 2nd letter, and he says, okay, I have to pay dues. And Mr. McKay responded that he had no problem paying dues, but he did not want to be a union member. That is a fair reading of the testimony that was in the district court, and the district court was entitled to make that as a finding of fact. But now we're back to the question I asked you earlier. Okay, there's evidence in the record, but the district court never answered the question. So why shouldn't we just send it back, maybe with a little short order that says we meant what we said? Answer the question, please. Well, I believe, Your Honor, that the record is here. This case- So we should make the determination? Is that what you're asking us to do? I would say to Your Honor that there is inadequate evidence as a matter of fact or law to say that Mr. McKay was ever a union member. Well, there's- It's not in the record. There's evidence that he got an absentee ballot and returned it. He was he, like everybody else, was told that everybody in the collective bargaining unit was a member of the union. He was told that he had to take some kind of affirmative step, apparently, to not be a member. And from that, the district court perhaps could and maybe did conclude that there is no indication that he took the steps necessary to make himself not a member. And in the face of the notice, coughed up the delinquent dues without also trying to separate himself. That would get me to the legal point that none of the – first of all, not all of those facts are accurately stated or in the record. And I would really want to go through those with Your Honor. But that also gets us to the legal point. Even if all of those facts were true, as a matter of law, that could not make him a voluntary and consenting member. And I'll go through those with you. First of all, as far as the contract ratification vote, there is testimony at one excerpt of Record 197, the union president said, quote, the ratification vote is open to everyone in the bargaining unit. So if the ratification vote was open to everyone in the bargaining unit, you can't look at that. Was there contrary evidence also? Excuse me? Was there contrary evidence also? Contrary. Evidence to that, i.e., that it was only open to union members. No, no. The record is clear in two places that the union president, Mr. Juriczynski, said that election was open to everyone in the bargaining unit. So that does not make Mr. McKay a member. As far as the paying dues, again, I would refer, Your Honor, to the letter that made him pay the dues, December 2nd, 1999. There's nothing in there about you have the right to be a nonmember, you have the right to pay reduced dues. But he knew that. He'd been told that he'd both gotten paper and been told it before. Well, let's assume that he knew that he had an option to pay reduced dues. But just because he didn't say, I want to pay the reduced dues, does not make him a member of the union. Again, you have to go back to business of voluntary unionism. So let me ask you something. One of my questions is, is the finding that we do have, i.e., as to what he actually did and that the union at least reasonably believed him to be a member, whatever member means, sufficient for us to proceed to the legal question in that, again, member's a murky term here. And if member means somebody who has agreed to pay the entire amount of dues and essentially said, that's all I want to do, leave me alone, is that person entitled to a Hudson notice, which is what the judge essentially says, no. He's agreed to do it this way. That's what he's going to do. Your Honor, in order to be a union member, there must be some affirmative action, some acceptance. Well, that's what you're saying. But we also know that there is a concept of financial corps member, which is somebody else. But you don't – when you're dealing with financial corps and this question of letting the union know that you object, that is a completely different issue. And that wholly conflates the idea that I can go up to you and say, you are a union member. And if you sit there silently, well, then, in fact, you become a union member. Voluntary unionism, principles of Federal Law, do not operate that way. No, you become somebody who has agreed to pay – be a financial corps member and to pay the entire amount of dues, because that's essentially what he agreed to. Why are we going behind that? But then, if you look at the Hudson notice, then the Hudson notice is invalid. He never received any of what this Court has said that's valid. But you're assuming that such a person has to get a Hudson notice. And where are we getting that from? Because – I mean, there's no case like this is the problem. No, there is no case like this. I agree. But if you look at the facts of this case, the union has a constitution. We haven't discussed that at all here, Your Honors. And I think this is very important. We understand the point with regard to the fact that they didn't comply with any of the formalities of how one's – And that is critical. That is really critical. That's what United Nuclear, a case that this Court cited in the first opinion, United Nuclear says you can't just create members by osmosis. You can't just create members in ways that are ultra vires for the union. They have a constitution, the organic laws of their entity. Let's put it in other terms, what I'm trying to say. How does he have standing to complain about not having gotten a Hudson notice if he – whatever we call him, whether we call him a member or a quasi-member or whatever we call him, has said – has essentially agreed to an arrangement by action and by – given what he was said, where I'm not going to participate in the union, you can't discipline me, let's assume you can. I'm not subject to the union constitution, but I am going to pay all the dues, and that's fine with me. But he didn't say that. He did not say that. And you don't think that's what the district court essentially held without deciding whether he was a member in other senses? No, I don't think that was what the district court held, because, again, there is an incredible amount of testimony in this record that by using the term, okay, I'll pay you your dues, which is what the December 2, 1999, letter said, in no way was Mr. McKay importing some meaning of membership. But he knew what to do if he didn't want to pay the full dues. Excuse me? But he knew what to do if he didn't want to pay the full dues. Well, you're now saying he knew because he got the Hudson notice. No, not because he got the Hudson notice. Because he got a prior notice, which I guess in the NLRA context would be called a back notice. He got a notice telling him not how the dues break down, but what to do if he doesn't want to pay full dues. No, actually, it's one notice. There's there were two versions of it, but what we're really looking at is one notice, which was the union's Hudson policy, an effective Hudson policy. What about this paragraph 7, which immediately follows the language I'm having such difficulty with, where the court says that your client twice received adequate notice as to what his rights were and his obligation to invoke those rights, and that he could either pay union dues or agency fees? But the quote adequate notice, again, goes back to the Hudson notice, which we contend is inadequate as a matter of law and not adequate notice. If he is respecting his right not to want to join the union, that's fine. But is it all that difficult a concept to understand what he was told that if you don't want to be a member, you still have to make payments to us, but they're just in a different amount? Well, he wasn't actually ever told what the different amount was. Well, because they hadn't computed it at that point, right? And therefore, they were in violation of Hudson. But he was informed that there was a procedure by which someone who did not want to become a member of the union could nonetheless continue in the employ of Alaska Airlines by paying some different amount of money. I would say, if that makes him a member, then Federal labor law has been shared. That's not the question. No, that's not the question. I mean, I realize you spent four days trying this. And I'm trying to see why this is such a difficult concept for a guy who is capable of repairing aircraft engines and frames to understand. I mean, it's not that difficult a concept, is it? Well, his answer to the union officials who were coming to him and telling him any of this was, as the district court found, I have no problem paying the dues, but I do not want to become a union member. I don't see how much more he could do or say. All he has to do is read the notice that was given to him, and that tells him how you do it. I mean, it's almost like he didn't want to read the stuff that was on the bulletin board in the workplace, because he knew that was the union's bulletin board. But when they gave him actual written notice that told him what he should do, your position is he had no obligation to read it or to follow the advice that he was given. He told the union president not to do it. But the notice he was given said you have to do it in writing. No, but the notice that he was given is the union's Hudson notice. That notice did not give him anything. Well, unless I'm using wrong terms, I do not understand that to be a Hudson notice. A Hudson notice is the notice that you say wasn't given. Right. That's right. All right. But so it wasn't the Hudson notice. It was the notice that sort of precedes a Hudson notice, which tells people that they don't have to be made. It's what's called a GM notice under the NLRA, right, which there's no law that says you have to give under the RLA. So in some ways, they were giving him more than the statute requires. But this was the union's Hudson notice. This is what they gave to him, and this was supposed to inform him of everything, protect him of his rights, tell him what the reduced amount was. But what it did inform him of, but the one thing it really did inform him of is that he didn't have to be a member and what to do if he didn't want to be. I think if you parse that very carefully, you might be able to glean that from that notice. I don't believe that notice is adequate in any way, shape, or form at all. Just to be clear, when we're talking about that notice, what are we talking about? Are we talking about the policies and procedures applicable to nonmember fee payers? That is what you're talking about. That is what we're talking about. I don't have the exact page number. And this is the notice that's supposed to say how you don't become a member? Well, that is their interpretation. It doesn't have anything to do with how you become a nonmember. Well, that's my agree 100 percent. If that's their interpretation, is we gave him this piece of paper, which in my view is rather difficult to decipher what Wheeling means. They claim it's their Hudson notice. Well, forget Hudson notice for a minute, okay? Put Hudson aside. It seems to me everybody's conflating Hudson and membership, I mean, which are two different issues. One is, is he a member or is he not a member? And I don't have the faintest idea. I was not a labor lawyer. My colleague, I think, was. So I haven't got a clue about how or what kind of notice is required, if any, or explanation about how one becomes a nonmember. Well, I would really like to answer that. The record, that's what I would have thought we had sent this thing back for, and for a determination on it, which doesn't exist. To me, this policy has absolutely nothing to do with whether you're – it assumes you're a nonmember, and that's the reason he was given it, because they assumed he was not a member. And this, then, tells you how you can object to the use of certain fees. That is correct. Yes, that is correct. So I agree that this notice is really not relevant to explaining rights of membership or not. Except that there was a finding that he was given this notice with a conversation twice, in which there was more explanation given. I guess I would look at it this way. Maybe this helps in some way. I think the real bottom line issue in this case is, what is an employee's default setting? Okay? I come to work. I'm there. I'm screwing my widgets into the airplane. What is my default setting? And the answer must be, under federal labor law, my default setting is, I'm a nonmember, because membership is voluntary unionism. It cannot arise out of osmosis, ultra-virus actions, or things like that. The default setting must be, I'm a nonmember. But it can't also, then, include the corollary that you have the right to continue working in a unionized environment and basically be a freeloader, get all the benefits with the employer, and have no obligation to contribute to the union. Mr. McKay paid the dues that were demanded of him, according to the letter. You pay us dues or we'll fire you. Well, eventually he stopped, which is what got him fired. Well, that is correct, Your Honor. But it is also not fair to say that Mr. McKay is someone who had no intention of ever paying, because, in fact, it's also in the district court's decision that after he was fired, he tendered a check for $400. Well, I would, too. Absolutely. But you can't say that he was never going to pay and so on. I'm not saying that. I'm saying, why couldn't he have simply read what they gave him and done what the procedure specified and then continued to make whatever the payment was when they finally figured out what the reduced amount was, which I understand was less than 5% less than what a full dues payment would be. I think the answer is, as Judge Reimer was saying, what they actually gave him does not really address that. Yeah, but there's a finding here that a shop steward who was found credible Did that notice this? I'm sorry. That there was a shop steward who was found credible, testified that he gave a copy of the non-member fee payer policy in the summer of 99 and discussed with him the meaning of germane and non-germane expenses. He explained to the plaintiff that he must either pay membership dues or a non-member agency fee. He stated that he did this out of concern that Mr. Mackey may want to become a non-member. On cross-examination, when challenged with a statement that I advised plaintiff that if he wanted to become a non-member dues objector, he must notify the union, he admitted that he did not know whether he was a union member or not. But he did say that he, and he didn't give a copy of this dues objector plan to anyone else. So he was told, according to the findings, that he could become a non-member and he had to notify the union. Your Honor, in response to that, I would say, how did he become a member? Again, we have the default setting issue. Because they give him this policy, does not make him and cannot make him as a matter of fact or law a member. The default setting must be non-membership. In fact, what you just read, Mr. Lovis, that shop steward, said he did not actually know whether the plaintiff was a union member or not. This union, by not following its own policies, rules, and constitution, had no idea except that all they wanted to do was dragoon everyone into what they called membership without following their own rules, procedures, and bylaws, which, as a matter of Federal labor law, cannot make the non-member, the person who by default is a non-member, into a union member. Because it's almost as though, again, if I walked up to one of Your Honors and said, well, you're a member of a particular church, or you're a member of a particular political party, and you stood there, well, does that make you, as a matter of law, a member of the church or a political party? It just cannot operate that way. And unions traditionally have membership cards. They have applications. It's unbelievable to me that this union will say, well, we shouldn't be forced to guess. Well, all they had to do was hand out membership applications to the bargaining unit, and then they would know. And this whole issue wouldn't even be here. But it is here because they didn't follow their own rules and so on. I'm way over my time. And I'll listen to it.  Thank you. McGrath. McGrath.   McGrath.         McGrath. McGrath. McGrath. McGrath. McGrath. McGrath. McGrath. McGrath. McGrath. McGrath. I'll try to pay close attention to the questions. I'll jump in as well. I think the ultimate issue in the case is whether the unions were justified in treating Mr. McKay as a member in substance. I don't understand what member in substance means. Well, I'm sorry. You're either a member of something or you're not. And what your subjective belief, whether it's reasonable or not, can't be the test. I mean, you offered union membership to everybody. And doesn't there have to be some manifestation of accepting it? I agree, Your Honor. And there's no place in this record that I can find where the district judge said, yeah, that's right, and I find that he accepted union membership and, therefore, was a member of this union. I think if you read the decision of Judge Martinez in context, he does come down on that side of the fence. It's interesting that he uses the very language that this Court used in what I'll refer to as McKay 1. This Court said there are a number of facts which suggest that McKay acquired membership in the union by conduct or acquiescence. And, by the way, the term substance I used comes from another case that I did not step in, and they were nevertheless found to be an employee or a member of the union. But in this decision, Judge Martinez, he parrots the very language that this Court used in McKay 1. He does that in Conclusion No. 6, paragraph No. 6, when he says that he acquiesced. He acquiesced. That's at line 10. And this Court affirmatively determined that the union was justified in treating Mr. McKay as if he was a member in enforcing the union's security clause. That's a concept I don't understand, that the union justified in treating him when it hasn't followed any procedure, didn't give him a card, heard him say he didn't want to be a member, and gave him a copy of the policies and procedures applicable to nonmember payees, from which I infer that the union reasonably believed that he was not a member. I never ---- He's the only one who got this policy. I ---- until you said that today, I never thought of it in that ---- that somebody can think of that. I'm glad you brought that up. The whole point of handing Mr. McKay that policy twice and giving him personalized attention and verbal explanations with people that he knew and worked with was to tell him if he didn't want to be a member, there was a procedure. Mr. McKay ---- This procedure has absolutely nothing to do with being or not being a member. What it does is to say that nonmembers who are required to pay service fees can object to the use of those fees. So this is kind of a Hudson thing without being a complete Hudson notice. But it in no sense, as I read it, tells me, if I'm in this conundrum, how I get myself out of being a union member. I think the overall point, though, of giving him this and giving him the explanation was to let him know, look, if you don't want to join the union, fine, you have that option. Here's how you do it. But how did he opt out? How could you possibly ---- how do I know if I am he, how I opt out of something? I'm not given a piece of paper that says opt out? I'm not told what the procedures are for opting out?  He had to say that he didn't ---- But this is talking about objecting to the use of fees. It nowhere says, ah, if I don't want to be a member, then I send a notice to the treasurer of the Aircraft Mechanics Fraternal Association at Post Office Box 1221 saying, I don't want to be a member. However, I understand that I have to pay service fees. And I'll look forward to getting your Hudson notice in due course. And meanwhile, you don't have any right to enforce your union security clause against me and get me fired. I think it's easier than that. Mr. McKay said, and it's in the record, that he understood there was a mechanism. The mechanism was for ---- Pardon? What is it? It's for him to say, I don't want to be a member. I want to pay agency fees. But he said, he said, I don't want to be a member. What he said was he was willing to pay dues. The district court found he said he didn't want to be a member. Yes. But I would say that that's not a whole lot different than somebody saying, I don't want to pay the traffic ticket or my taxes, but I'll pay them. What did he actually say? Did he ever ---- I mean, was I don't want to ---- was the finding that I don't want to ---- he said he didn't want to be a member shorthand for what he actually said. Is there a conflict in the record about what he said, or did he say it more than once? Yes. Let's ---- what I think we're all ---- what Your Honor is referring to is on page 4 of Judge Martinez, paragraph 10, line 1110, where, quote, Mr. McKay responded that he had, quote, no problem, end quote, paying dues, but he didn't want to become a union member. What I'm asking you is this. Did he ever say, I do not want to be a union member, or did he say, I don't want to participate in the union, I don't want to get any mailings from the union? What I understood, my recollection as a lead counsel in the trial was that he said he didn't want to participate in union activities. He didn't objectively convey to the union simply that he wanted to opt out of membership and pay agency fees instead. In fact, and to your point, Your Honor, all of the conduct was to the opposite. I mean, the union was entirely justified on the facts. Here's an individual that simply evaded wanting to pay anything, but every time he was approached and it was explained to him that he had this option, he wouldn't do the simple and obvious thing, simply say, I don't want to be a member. What do I have to do? And if he was unclear. But he testified that he was going to. But what excuses the union from complying with the provisions of its own Constitution in just unilaterally declaring that everyone who works in the bargaining unit is now a member of the union? Thank you, Your Honor. I'm glad you brought that up. There isn't anything. And it didn't happen. There was no draft. Nobody was inducted into the union. At all times, unionism was voluntary. What happened is as simple as this. AMFA was a new union on the property, and they simply waived the formal requirements in their Constitution, and they invited everybody. So by declaring, I guess, to themselves and at some point to the workers, we're an inclusive union, and you're all now members of it. Welcome to AMFA. And as a matter of contract law, where is the acceptance of their offer by Mr. Mack? The acceptance is in that he was willing to pay dues. When he had the chance and it was explained that he didn't have to, he didn't take it. He didn't follow up. Yeah, but that then puts the onus on him to formally, in essence, reject your offer of membership. Well, all he had to do was not. That gets back to my first question. What gives the union the right to basically change the rules where the Constitution provides quite formally and specifically how one becomes a member of this union? The union, I believe, has a right under federal law to determine its own membership requirements, and they have the right inherently to. So they don't have to comply with any of the formalities of bylaws or constitutions that otherwise govern organizations? Sure, but they can waive them, and they waive them for a purpose that's enshrined in federal law, promotion of democracy and inclusiveness in the bargaining unit. This wasn't done as a conspiracy to draft people. This was done to welcome everybody in. You have to remember that this came in the context of a divisive representational election. This came in the context of. I can understand why they wouldn't want to do what Mr. Taubman suggested, which was to basically go out to the workforce and say, you know, here's a membership application for those of you who wish to fill it out. Please do so and return it to us. And then here's your union membership card. If it had been as divisive as you suggest, the chances are they might not have been very happy with how many of the membership applications they got back. In fact, 99 percent of the bargaining unit did exactly what the union thought they would do and started paying dues. So, you know, this is a situation where the notion that Mr. McKay objected to become a member. But in essence, what you're arguing is that we should completely ignore the written provisions of both the collective bargaining agreement and the contract, not the contract, the bylaws or constitution of the union, and declare that the union can unilaterally replace it with an oral contract of membership, which you assent to by failing to object to inclusion in membership. Where in labor law do you get that right? I really think it's simpler than that. I think it was a simple waiver that was communicated to the entire bargaining unit, and they could perform that acceptance simply by paying. And if they didn't pay, and this is the case of Mr. McKay, they were treated to individual, personalized explanation of their options. And so when Mr. McKay says, I don't have any problem making payments, I just don't want to be a member, why isn't that sufficient to give the union notice that he's rejected that offer of membership? Well, but how is it that's the – that goes back to my example of the ticker, the taxes. I mean, I don't necessarily want to pay for everything that the government does. You can pick the example. But I'm willing to pay all of my – what I'm required to pay. The problem here was that Mr. McKay was playing a game with the union. He pushed it too far, and he lost his job. He did – he was the classic free rider. But it's also true that the union was incredibly sloppy here in terms of both figuring out a way to figure out who was a member and also with regard to the how-to notice. And I suspect if you had to do all over again, you would do it otherwise. Yes, Your Honor. So one of my questions is, and this is very unusual in a case like this, is there any sense that instead of going back and asking the judge to do this again and find out whether it's a member and then finally get to the issues in the case of mediating this case? And I know it's very unusual in this kind of case. There are usually strongly felt views. But this is such an unusual, sui generis case. Is it worth continuing to try and get to the real issue here, which is whether you – the ultimate issue, which is whether you complied with Hudson or didn't comply with Hudson, whether Hudson even applies under the RLA, what it means, and so on? Or can we straighten this out by having our wonderful mediator staff talk to the public for a while? I really don't think there is a Hudson issue here. I mean, the bottom line has already been pointed out, I think, is that there wasn't anything for the union to audit at the time. They were brand new. Well, no. That just simply means you can't enforce the security clause until such time as you have it and are able to give a compliant Hudson notice. That's all. I disrespectfully disagree with you, Your Honor. I think that would put the entire purpose and the right of all the members of that functioning union at risk. What – it isn't as if – No. I mean, Hudson's very clear. You've got to give adequate, compliant notice, including financial information, and until such time as you've got it, you can't enforce the security clause. I think that takes the technicalities and defeats the intent of Hudson. I mean, the Hudson balanced the right of the union to function and the right of the individual. The ultimate issue here is, was Mr. McKay forced to be a member? He were not a member. He had the right not to pay anything until he got a compliant Hudson notice. That's true. But in this case – Where does that come from? The only case I know that says that is Churney. And our cases, I thought, all say that there is – once you get a – there is no right to not pay anything, but there is a right, once you get the correct Hudson notice, to object at that point. I think that – I'll caveat my answer a little bit. I think that the union still has some obligation. I don't think that somebody gets scot-free off and has no obligation as a member of the bargaining unit. I want to point out that the union in this case did not prejudice Mr. McKay. It made an estimation to discount, as it did for any other member, even though they didn't have an audit trail. So it wasn't as if the union was saying, good, we got you. You know, you're going to have to pay 100 percent because we don't have an audit yet because we don't have – it's not practical. That's not the case at all. There was no prejudice. Was he ever told when – in terms of time sequence, although there is something in the record that says that the fee at that point was 90 percent, which was estimated arbitrarily. Was he ever told that? Was he ever told what the initial decreased amount would be? You're going to stretch my capacity for remembering the record. I'll say this. I believe that that information was made available to him. But at this point – But wasn't it after he was fired? Because you didn't even have audited financials until a month after he was terminated. That's true, but that goes to the calculating it based on that. But the union was at all times prepared to discount if – it would have been pointless to give him – The question is, did anybody ever testify? The union shop steward, Mr. Mackey, the president of the union, that they told him that if you will pay 90 percent of our union dues each month until we figure out what the exact amount is, we'll accept that. Yeah, sure. I believe that the – I believe the testimony of Mr. Lovis, Mr. Dersinsky, and Mr. McCormick can be all summed up to say that, yes, they provided him with information that he would pay less than 100 percent. But not what it was. I'm sorry? Not what amount. Not – I don't recall if it was – if there was an exact – I just don't recall. I don't think so. Yeah. You could be right about that. So if he wanted to come in and say, here's the amount of nonmember dues, he would have had made – at least would have had to make a further inquiry. Yeah. And I'm – I stand before Your Honors 100 percent confident the union wasn't going to take the action and enforce the clause against him if he was willing to pay. The issue was, he didn't want to pay anything. He wanted a zero percent. And we can go all day back and forth with what should have been 95 or 93 or 92 or – the issue was, he wanted zero percent, and he wouldn't pay, and they'd go after him, and they'd tell him his options, and he'd say, well, yeah, yeah, I'll pay, here's the check, and then he would. And that was the game that was played until the end, and he overplayed his hand. I have a question which – oh, excuse me. Go right ahead. Which is – which is often a real point, except I'm just curious for your response, because the actual termination letter by Alaska Airlines says, we have been made aware by AMFA that pursuant to this article, you are given an opportunity to join the union and have refused to do so. Therefore, you're out of here. Yeah. And I think that was an unfortunate wording. I didn't – Well, again, well – I didn't – I – you know, you made a comment about whether the union was sloppy. I said the company was sloppy there. Well, it goes back to the fact that all of this is doublespeak, and it's doublespeak because the RLA and the NLRA do say that you have a right to make people become a member of the union, but we all know that that isn't really what they mean. So everybody gets very confused when they start talking, because they don't mean not to join the union, they mean not to pay the dues. Exactly, and I mean a properly – Or a fee. It's nice if you have a union security clause in a contract that distinguishes all this. They don't always, and I don't have the case site, but I'm 99 percent confident that it doesn't have to under law. But the – what matters is what's done. And what was done in this case was he was given the option, and he was treated the same as everybody else in the bargaining unit, and he didn't contest that he was a nonmember until after he was terminated. Not even his grievance, which is a legal position he took with counsel, makes the claim he was a nonmember. It makes a different claim. It says that, well, I couldn't pay at the time because I was involved in a time-sensitive job. That should have gone on to arbitration. That would have gone on to arbitration, and it would have been by impartial – but this – what all the premise of the appellant's argument at trial and now is – comes out of a litigation strategy developed after the fact, and despite the fact. To follow up on Judge Berzon's question, then, because Alaska Airlines was dismissed as a party to the case, mediation isn't really possible here, is it? Because I presume he'd want his job back if you were able to successfully mediate the question of how much he owed the union. Yeah, I think you mean – probably mean arbitration, but that's always a concern in these cases, is when – is when – is when – He wants his job back, but he wants damages for his lost wages. Is there a difference between what he's making now if he's still employed versus what he would have made if he'd stayed there? There was a point in time when – when all three parties would have been at the table. And he's six years gone now? No. And – and, I mean, Mr. McKay withdrew his grievance – withdrew his grievance, and that's why the district court and this Court sustained that he didn't have that anymore, and he proceeded to court. I mean, he took another decision then, and I think he has to live without it. Let me – let me come back to what we were talking about a minute ago. I think your position is that even if you were not a member of the union, that your Hudson notice was adequate. Yes, ma'am. And the reason is because you didn't have any better information available? I mean, when did you give a Hudson notice? Well, my position – I don't think Your Honor's going to accept it, but my position was that we provided that notice in the form of a policy statement that was for non-members, and that was given – Okay. And that doesn't have financial information in it? I'm not disputing that. Okay. So why, then, do you think that that suffices under Hudson, Ellis, Knight, and Dean? Because it would have accomplished Hudson if the man had elected, I'm not going to  No, no, no. I'm assuming he's not a member. Okay. I'm assuming he's not a member. So do you – it's your position that the Hudson notice was nevertheless compliant? Yes, because the trial testimony from Mr. McCormick was that he would have been provided with a discount, and that was based on the financial – Well, would have, could have, should have. The question is whether he was provided with the kind of information that Hudson, Dean, Knight, and Ellis require. Couldn't. It wasn't practical. I understand. Okay. So that's the bottom line. Sure. And that's – Okay. So now my question is, do we really need to decide whether he was a member or not? Well, I think you do. I mean, he's – Well, why do we? Pardon? Why do we? I'm sorry. Why do we? Why isn't it at least – does it matter – does he have standing? Let's assume that he is not a member in the voluntary member sense, i.e., he couldn't – which to me means he couldn't be subject to union discipline, for example, for crossing a picket line because he never signed on to the obligation not to do it. Let's take – and he can't vote in a union election either because he's not really a member. All right? Let's say in that sense he's not a union member. Okay. Right. But he, on the other hand, did say – was told what to do if he wanted to pay less than complete dues and said, I don't want to participate, but I'll pay dues. And let's assume we believe that to mean dues in general. So how does he have standing at that point to complain? And he never raised any complaint about how much money he was paying or suggested he wanted to pay less. And he was told how to do that. How does he have standing to complain about not having gotten the break – the financial breakdown when he expressed no interest in it at any pertinent time? Why does it matter whether he's a member? I'm not sure. He didn't bring up his nonmember argument until after he was terminated, that it wasn't injected. Well, he didn't bring up his Hudson argument. He didn't bring up his argument that he was entitled to a notice of financials. I would go a little bit further than that. I think that he gave every indication to the union that he was a member, and the only issue was whether he was going to pay his dues. I mean, this is a – Well, you can say that on the one hand. On the other hand, you can say, look, he understood that whether he was a member or not, he had to pay something. But until he got compliant Hudson notice, he had no obligation to pay anything. That's Dean, Knight, Ellis, and Hudson combined. I mean, that's – it follows – either one follows logically. Well, but I think if you were to take that, then that would mean that nobody in the bargaining unit would have an obligation to pay anything at all, because we hadn't had an argument. If they're going to object to being a member of the union in the true sense of the word, the one who was card-carried. And, of course, we contend that that objection was never made, despite multiple – It doesn't have to be. What says it has to be? He says, I don't want to be a member of the union? I don't have – you know, until I get compliant Hudson notice, I don't have an obligation to pay anything. Well, the problem with that is the facts show that he indicated to the union he was going along with being a member. I mean, he panted a check for dues when given the option to do something. You don't know whether that check was for dues to the union in the traditional sense or whether it was just saying, look, I'm not quarreling with paying money. I just don't want to have a union label on. But his subjective intent, whether he liked it or not, is that relevant to anything? I mean, again, we're back to the ticket or the taxes. I don't necessarily agree that I should be fined or pay the taxes, but I'm going to. And legally, that is a huge consequence. And there's a big distinction in the law. If I could. I'm sorry. To follow up, again, on this question of whether there is anything in our law that says that if he didn't get a Hudson notice, he was entitled to pay nothing. Do we have any case law that supports that? In Dean, actually, what he did was he unilaterally produced the map. They didn't pay nothing. Do we have any case which sanctions paying nothing? I don't know how you say that he has a – I don't know how you can say you have a right to pay nothing at all. And that's what he was, in fact, doing. He was – because he gets – and that makes him a free rider. And I think there is clear case law that you don't have a right to be a free rider. You don't have a right to enjoy the benefits. I mean, the bottom line is that he had a choice and he didn't elect it. And his position was, I'm not going to pay anything. Catch me if you can't. And that was the game that was played, and he overplayed it. Okay. Thank you. I guess I've overplayed my time, it looks like, from the light, so I'll go back to the table. Yes, I think everybody has. Do you have any further questions for anybody? No. All right. Thank you, counsel. Both of you were way over time. And the matter, it's just argued, will be submitted. We appreciate your arguments.
judges: Rymer, Berzon, Tallman